Se. Auto., Inc. v. Genuine Parts Co., 2016 NCBC 61.

STATE OF NORTH CAROLINA

COUNTY OF CUMBERLAND

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 1186

SOUTHEASTERN AUTOMOTIVE,
INC.,

            Plaintiff,

            v.

GENUINE PARTS COMPANY d/b/a
NAPA AUTO PARTS and
JOHN MICHAEL RIESS, II,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER OVERRULING OPPOSITION
TO DESIGNATION**

1. THIS MATTER is before the Court on Plaintiff Southeastern Automotive, Inc.'s ("Southeastern") Opposition to Designation to Business Court ("Opposition"). For the reasons set forth below, the Opposition is OVERRULED.

> *The Law Offices of Lonnie M. Player, Jr., PLLC by Lonnie M. Player, Jr. and Stevens Martin Vaughn & Tadych, PLLC by K. Matthew Vaughn for Plaintiff.*
>
> *Alston & Bird LLP by Michael A. Kaeding and Ryan P. Ethridge for Defendants.*

Gale, Chief Judge.

2. Southeastern filed its Complaint in this action on February 12, 2016. The Complaint was served on Defendant Genuine Parts Company ("Genuine Parts") on February 24, 2016, and on John Michael Riess, II ("Riess") on March 12, 2016. In response, Defendants filed a notice of designation, and the case was designated as a mandatory complex business case on March 22, 2016. The case was assigned to the Honorable Gregory P. McGuire on March 23, 2016.

3.     The case was subsequently removed to federal court.  Following removal, Southeastern filed its Opposition in this Court on April 21, 2016.  The federal court remanded the case on July 18, 2016.  Defendants filed a response to Southeastern's Opposition on August 2, 2016.  The Opposition has now been fully briefed and is ripe for ruling.

4.     Defendants designated the matter as a mandatory complex business case pursuant to subsections (a)(1) and (a)(5) of section 7A-45.4.  N.C. Gen. Stat. § 7A-45.4(a)(1),(5) (2015).  Although the Court need not further consider the point in light of its ruling as described below, the Court notes that Defendants' Notice of Designation further indicated that the case otherwise falls within the scope of section 7A-45.4(b), and the amount in controversy is at least five million dollars, such that designation would be mandatory whether or not requested by one of the parties.  *See id.* § 7A-45.4(b)(2).

5.     A matter falls within the scope of subsection (a)(1) if there is a material issue related to a dispute involving the law governing corporations.  *Id.* § 7A-45.4(a)(1).  A matter falls within the scope of subsection (a)(5) if there is a material issue involving a dispute regarding the use or performance of intellectual property, including computer software or data.  *Id.* § 7A-45.4(a)(5).

6.     Southeastern opposes designation, arguing that there is no material dispute involving the law of corporations, making designation under subsection (a)(1) inappropriate.  Southeastern further contends that while the claims involve the use and performance of Genuine Parts' software and data systems, the Complaint

presents no material issue regarding Genuine Parts' intellectual-property rights in those systems, making designation under subsection (a)(5) inappropriate. The Court agrees that the Complaint raises no material issue within the scope of subsection (a)(1) but disagrees with Southeastern's narrow reading of subsection (a)(5).

7. The Court considers the following allegations in the Complaint to be pertinent to determining Defendants' right to mandatory designation. The Court accepts those allegations as true solely for purposes of the present Order.

8. Southeastern is an auto-parts distributor and retailer that maintains facilities in several North Carolina locations. (Compl. ¶¶ 5–6.) Genuine Parts does business in North Carolina as NAPA Auto Parts. (Compl. ¶ 2.) Riess is Genuine Parts' general manager for its NAPA Auto Parts business. Prior to contracting with Genuine Parts to become an authorized NAPA Auto Parts retailer, Southeastern had maintained two lines of business which it refers to as "specialty lines," which involve the sale of Ford Motorcraft parts and a line of business involving radiator and air-conditioning. (Compl. ¶ 12.) Southeastern and Genuine Parts entered into an agreement through which Southeastern would convert its locations into NAPA Auto Parts stores, but would be able to maintain these specialty lines. (Compl. ¶ 15.) In its agreement with Genuine Parts, Southeastern agreed to divest itself of its location in Raleigh, North Carolina, and to acquire three additional stores from independent NAPA Auto Parts affiliates. (Compl. ¶ 16(a)–(b).)

9. One essential component of the contract between the parties included preparing an inventory at each of Southeastern's facilities, with certain parts being

rebranded as NAPA parts, others being returned to the original manufacturer for credit, and a final inventory value being computed. The contract contemplated that this inventory process would be accomplished through two Genuine Parts software platforms known as TAMS II and Multistore ("inventory system"). (Compl. ¶ 16). Each of the two software components was to be installed and inventory counted at each of Southeastern's locations, with Southeastern's representatives observing the inventory process. (Compl. ¶ 26.) Ultimately, Southeastern's parts inventory was transported to another location before the inventory process was undertaken and was completed without Southeastern's representatives being present. (Compl. ¶¶ 28–36.)

10. Southeastern contends that the inventory process could not be conducted as the contract provided because of limitations of Genuine Parts' inventory system, particularly the incompatability of the two software modules and the inability of Genuine Parts' personnel to utilize those components effectively. (Compl. ¶¶ 37–49.) In addition to the inventory process not having been completed as the contract required, Southeastern further asserts that use of Genuine Parts' software caused Southeastern's stores to become overstocked, requiring Southeastern to make excessive purchases from Genuine Parts. (Compl. ¶ 48.)

11. Ultimately, Genuine Parts declared that Southeastern should suffer a $1.4 million write-down from the inventory valuation on which the parties had based their agreement. (Compl. ¶ 53.) Southeastern further complains that the software it was required to install does not account for the additional specialty lines that Genuine Parts agreed Southeastern could continue. (Compl. ¶ 57.)

12. In regard to the contract undertakings that required Southeastern to divest itself of its Raleigh location and to expand by acquiring operations of three independent affiliates in other locations, Southeastern asserts that Genuine Parts falsely represented that those independent affiliates had agreed to be merged into Southeastern. (Compl. ¶ 30.)

13. Southeastern first makes a breach-of-contract claim, asserting that Genuine Parts breached the agreement between the parties by (1) failing to perform on-site accounting and inventory, (2) inaccurately accounting for Southeastern's inventory, (3) failing to credit Southeastern for $1.4 million of inventory, and (4) failing to enroll Southeastern's representatives in the NAPA management training program. (Compl. ¶ 59.) In its second claim, Southeastern asserts that Genuine Parts made fraudulent statements to induce Southeastern to enter into the contract. Southeastern's third claim asserts that Defendants have committed unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

14. This case was filed after October 1, 2014. The Court must then determine whether the case was properly designated as a mandatory complex business case by applying section 7A-45.4 as it was amended, effective October 1, 2014.

15. The Court first addresses Defendants' assertion that designation is proper under section 7A-45.4(a)(1), because the Complaint raises a material issue involving the law governing corporations. Defendants base their position on the argument that the law governing corporations is implicated from Southeastern's

complaint that Genuine Parts induced Southeastern to enter into the agreement by promising that Southeastern could acquire and merge with NAPA's independent affiliates, which must lead to a conclusion that "[i]ssues concerning any potential merger would necessarily implicate material issues related to the law governing corporations." (Notice of Designation ¶ 12.) The Court concludes that Defendants' argument does not square with statutory requirements. The Complaint presents no claims among Southeastern, Genuine Parts, and NAPA's various affiliates or the terms of any merger agreement between Southeastern and the affiliated entities. Factual allegations regarding those potential acquisitions or mergers are incidental to the claims that are actually presented against Genuine Parts. Accordingly, the claims do not present a material issue involving the law governing corporations within the scope of section 7A-45.4(a)(1).

16. The Court next addresses Defendants' assertion that designation is proper under section 7A-45.4(a)(5). Southeastern asserts in the Opposition that section 7A-45.4(a)(5) requires a material issue involving intellectual-property law. (Opp'n 4.) While the Court agrees that the Complaint does not raise issues that are governed by what might ordinarily be considered intellectual-property law, it also concludes that section 7A-45.4(a)(5) is not so narrowly worded as to require that there be such an issue.

17. Southeastern's position might have been more persuasive under section 7A-45.4 prior to its October 1, 2014 amendment. Southeastern's position does not comport with the statute as it was amended.

18.     As amended effective October 1, 2014, section 7A-45.4(a)(5) includes actions that involve a material issue relating to

> [d]isputes involving the ownership, use, licensing, lease, installation, or performance of intellectual property, including computer software, software applications, information technology and systems, data and data security, pharmaceuticals, biotechnology products, and bioscience technologies.

N.C. Gen. Stat. § 7A-45.4(a)(5).

19.     Prior to October 1, 2014, section 7A-45.4(a)(5) was more limited in scope and covered only disputes involving "[i]ntellectual property law, including software licensing disputes." *Id.* (amended 2014).

20.     The Court concludes that the 2014 amendment to section 7A-45.4(a)(5) expanded the scope of disputes within the statute's purview to include a dispute that involves a material issue regarding the use or performance of intellectual property, including computer software and data, without requiring a dispute regarding ownership of the intellectual property or another dispute that may require application of principles of the body of law known as intellectual-property law.

21.     Having concluded that section 7A-45.4(a)(5) should be so construed, the Court concludes that the Complaint presents material issues regarding the use or performance of Genuine Parts' computer software, information systems, or data. Accordingly, Defendants are entitled to designate the matter as a mandatory complex business case pursuant to section 7A-45.4(a)(5).

22.     The Opposition must be OVERRULED.  The action shall continue as a mandatory complex business case before the Honorable Gregory P. McGuire.

IT IS SO ORDERED, this the 17th day of August, 2016.

/s/ James L. Gale
_____
James L. Gale
Chief Special Superior Court Judge
   for Complex Business Cases